UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMER E. HAWKINS, | No. C 05-2623 SI (pr) |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SAN MATEO COUNTY LAW LIBRARY; et al., | |
| Defendants. | |

## INTRODUCTION

Homer E. Hawkins, currently in custody at Ironwood State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983 against a towing service and several county defendants for a due process violation based on the alleged failure to provide adequate notice and a hearing before selling Hawkins' car. The county defendants' motion to dismiss was granted almost a year ago and the only remaining defendant is the towing service. This action is before the court for consideration of the towing service's motion for summary judgment. For the reasons discussed below, the court grants the motion. Judgment will be entered in defendants' favor and against plaintiff.

## BACKGROUND

The following facts are undisputed unless otherwise noted:

In April 2005, Homer Hawkins was the registered owner of a 1985 Mercedes Benz Model 500, California license number 3AZL346. The registration listed his address as 1965 Manhattan,

Apt. # 6, East Palo Alto, California.  The 20 year old car had an odometer reading of over 280,000 miles.

Hawkins was arrested on April 20, 2005, after a car chase that started at the scene of an alleged burglary from which he tried to flee.[1]  See Amended Complaint (docket # 7), Exh. A.

Gilbert Medrano is an individual doing business in San Mateo County as El Dorado Towing. El Dorado Towing is a tow truck service.

On April 20, 2005, El Dorado Towing responded to a request from the San Mateo County Sheriff's Department to tow a vehicle from Manhattan Avenue in East Palo Alto after deputies had arrested Hawkins, the driver of the vehicle.  The car was hoisted onto an El Dorado Towing truck and towed to the El Dorado Towing place of business at 2575 Middlefield Road, Redwood City, California.

Thereafter, Medrano was contacted by a woman claiming to be the sister of the car's owner.  She requested that Medrano release the car to her.  Medrano informed the woman that the Sheriff had not released the car and that, once released by the Sheriff, he would need a signed authorization from the registered owner establishing that the woman was entitled to possession of the car.  After that initial encounter, Medrano never heard from the woman.

Later, a sheriff's deputy came to El Dorado Towing's lot, retrieved the personal property from the car, and authorized Medrano to release the car.

On April 25, 2005, the sheriff's department served a "notice of stored vehicle" on Hawkins at the address on the registration. The notice identified the make and model of the car, the place the car was removed from, the law enforcement officer who authorized the car's removal, and the location at which the car was stored.  The notice informed the owner: "You have a right to a hearing to determine the validity of this storage.  You may request the hearing at the below location in writing, in person, or by telephone. . . . You must contact the Detective

---

[1]Hawkins later was convicted. He has filed a separate habeas action challenging his conviction. The burglary and car chase that led to his arrest and conviction are described in the California Court of Appeal's opinion in his criminal case. See Hawkins v. Dexter, No. C 08-1087 SI, Petition, Exh. D, pp. 1-3. Hawkins was convicted of "residential burglary, robbery, assault with a vehicle likely to produce great bodily injury and evading a police officer. As a third strike defendant, he was sentenced to 80 years to life imprisonment." Id. at 1.

1 that was assigned to your case which is listed below.  Your failure to request or attend a
2 scheduled hearing shall satisfy the post-storage validity hearing requirements of Vehicle Code
3 Section 22852."  See Medrano Decl., Exh. A.

4       Hawkins did not request a hearing on the validity of the storage of the vehicle.  There is
5 no evidence that he actually received the notice.  At the time this notice was sent to his
6 Manhattan Avenue address, Hawkins was in the county jail.

7       Medrano states, and Hawkins does not dispute, that after receiving authority to release
8 the car, Medrano caused his employee to contact Clear Choice Lien Service, Inc., to initiate a
9 lien sale in the event the owner did not retrieve it.  Medrano's declaration states that Clear
10 Choice Lien Service then contacted the California Department of Motor Vehicles ("DMV") to
11 determine the name and address for the registered and legal owners of the car, received the
12 vehicle registration information, and caused a "notice of pending sale with accompany
13 declarations of opposition" to be mailed to Hawkins at the Manhattan Avenue address as the
14 registered owner on May 6, 2005.  Medrano Decl., ¶¶ 8-9.  The certificate of mailing of the
15 notice is attached to the Medrano Declaration as Exhibit C.

16       Medrano states, and Hawkins does not dispute, that before June 6, 2005, neither he nor
17 anyone employed on his behalf was ever contacted by the registered owner or by "anyone else
18 claiming to represent that individual and tendering documentation establishing that the person
19 requesting a release was entitled to possession of the Vehicle, concerning the pending lien sale."
20 Medrano Decl., ¶ 10.  Medrano did not receive any indication before the sale that anyone
21 opposed the pending lien sale.  Based on the lack of contact from the owner, the fact that the car
22 was 20 years old with more than a quarter million miles on it, and the absence of a follow-up
23 contact from the purported sister after she was informed what she needed to do to retrieve the
24 car, Medrano believed the car's owner had elected to let the car be sold rather than to pay the
25 mounting tow, storage and lien charges to retrieve it.  The towing, storage and lien charges
26 exceed $2,600 for the car.

27       In or about June 2005, the car was sold to a third party for $500, and El Dorado received
28 a certification of lien sale.  See Medrano Decl., Exh. D; see also document entitled "All Writ

3

1  Act" (docket # 42), Exh. D, 28th page (copy of certification signed under penalty of perjury,
2  stating that sale was for $500, and that the sale was made under Civil Code § 3072 after notices
3  of pending sale were mailed to the registered owner and DMV).

4      At no time before the sale of the car was Medrano ever informed by any source that the
5  Notice of Pending Sale, and/or the accompany documents sent by Clear Choice Lien Service
6  were not actually received by Hawkins.  At no time before the sale was Medrano notified of the
7  progress of criminal proceedings against Hawkins.  At no time before the sale was Medrano
8  provided a physical address for Hawkins other than the Manhattan Avenue address.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in San Mateo County, which is located within the Northern District.  See 28 U.S.C. §§ 84, 1391(b).  This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4

Generally, as is the situation with defendants' challenge to the Eighth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with the good faith defense, the moving party bears the burden of proof at trial, and must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). The court has looked through the entire case file and treated any statement of fact that was made under penalty of perjury as made in opposition to the motion for summary judgment.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

5

**DISCUSSION**

A.  California Law On The Lien Sale of A Towed Vehicle

California Vehicle Code § 22851(a)(1) provides: "Whenever a vehicle has been removed to a garage under this chapter and the keeper of the garage has received the notice or notices as provided herein, the keeper shall have a lien dependent upon possession for his or her compensation for towage and for caring for and keeping safe the vehicle for a period not exceeding 60 days . . . and, if the vehicle is not recovered by the owner within that period or the owner is unknown, the keeper of the garage may satisfy his or her lien in the manner prescribed in this article."  If the vehicle's value exceeds $500, the lien can be satisfied pursuant to Civil Code §§ 3067-3074.  Cal. Veh. Code § 22851.4.

California Civil Code § 3072 provides the procedures for a lien sale for a vehicle valued at $4000 or less.  The lienholder applies to the DMV for the names and addresses of the registered and legal owners of records.  Cal. Civ. Code § 3072(a).  Once that information is received, the lienholder immediately sends by certified mail with return receipt requested or by a U.S. Postal Service certificate of mailing, a "completed Notice of Pending Lien Sale form, a blank Declaration of Opposition form, and a return envelope preaddressed to the department, to the registered owner and legal owner at their addresses of record with the department, and to any other person known to have an interest in the vehicle."  Id. at § 3072(b).  If the DMV receives a completed Declaration of Opposition form within the time specified, the DMV notifies the lienholder within 16 days that a lien sale shall not be conducted unless the lienholder files a court action within 30 days and obtains a favorable judgment or the declarant releases his interest in the vehicle.  Id. at § 3072(d).  The lien sale is "void if the lienholder does not comply with this chapter."  Id. at § 3072(j).

B.  Due Process Claim

To prevail under 42 U.S.C. § 1983 on a procedural due process claim, a plaintiff must establish: (1) a liberty or property interest protected by the U.S. Constitution, (2) a deprivation of that interest by the government, and (3) the lack of process.  See Portman v. County of Santa

6

1 Clara, 995 F.2d 898, 904 (9th Cir, 1993). The first element is present because the loss of use 2 and enjoyment of a car deprives the owner of a property interest protected by the Due Process 3 Clause. See Stypmann v. City and County of San Francisco, 557 F.2d 1338, 1342 (9th Cir. 4 1977). The second element apparently exists because "a private towing company acting at the 5 behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the 6 state's purpose of enforcing its traffic laws, acts under color of state law for purposes of section 7 1983." Goichman v. Rheuban Motors, 682 F.2d 1320, 1322 (9th Cir. 1982) (citing Stypmann, 8 557 F.2d at 1341-42). The debate here involves the third element, i.e., whether there was a lack 9 of process – more specifically, a lack of notice and a hearing -- before Hawkins' car was sold.

10 The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires 11 certain procedural protections before the state may take an individual's property. "An 12 elementary and fundamental requirement of due process in any proceeding which is to be 13 accorded finality is notice reasonably calculated, under all the circumstances, to apprise 14 interested parties of the pendency of the action and afford them an opportunity to present their 15 objections." Robinson v. Hanrahan, 409 U.S. 38, 39-40 (1972), quoting Mullane v. Central 16 Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

17 It is undisputed that Hawkins was aware that his car had been impounded when he was 18 arrested.[2] It also is undisputed that a notice of a lien sale was sent to him at the address he 19 provided on the vehicle registration, that El Dorado Towing received no indication that the mail 20 had not reached Hawkins at that address, and that El Dorado Towing received no indication that 21 Hawkins objected to the sale of his car before the car was sold pursuant to California Civil Code 22 § 3072.[3] On the record, Hawkins has failed to raise a triable issue of fact that the notice to him

---

[2] The evidence also is undisputed that a notice of the stored vehicle was sent to Hawkins at the Manhattan Avenue address listed on the registration. That notification was made by the sheriff's department and was not the obligation of El Dorado Towing.

[3] The evidence in support of defendant's assertion that the notice was mailed to Hawkins is thin (apparently because most of the chores related to notice-giving were farmed out to a lien sale service rather than done personally by Medrano), but suffices to meet El Dorado Towing's summary judgment burden. The moving party need not produce admissible evidence proving the absence of a genuine issue of material fact when the non-moving party has the burden of proof on it, and may simply point out the absence of evidence to support the non-moving party's case. The court has reviewed the entire record

7

on behalf of El Dorado did not comply with minimum due process standards. See United States v. One 1971 BMW 4-Door Sedan, 652 F.2d 817, 822 (9th Cir. 1981).

Hawkins' case is based largely on his belief that El Dorado Towing and/or the county sheriff had to give him actual notice and had to hold a hearing (even if he did not demand one) before the car could be sold. His view of the law is incorrect. "Due process does not require that a property owner receive actual notice before the government may take his property." Jones v. Flowers, 547 U.S. 220, 226 (2006) (emphasis added). When the government actually learns that the notice it did provide did not reach the person, it must do more to try to give him notice; it must then take additional reasonable steps to notify the owner if practicable to do so. See id. at 234 (state required to take additional reasonable steps to attempt to provide notice to property owner before selling property when mailed notice of tax sale is returned undelivered and unclaimed); see also Robinson, 409 U.S. at 40 (where State knew that appellant was not at the address to which the notice was sent and knew he could not get to that address due to his incarceration, "it cannot be said that the State made any effort to provide notice which was reasonably calculated' to apprise appellant of the pendency of the forfeiture proceedings"). Here, there is no evidence from which it can be inferred that El Dorado Towing actually knew that the notice sent did not reach Hawkins. Under the circumstances, El Dorado Towing had no further obligation beyond mailing the notice of the pending sale to Hawkins at the Manhattan Avenue address on the vehicle registration. Due process also did not require that a hearing be held when the property owner had not taken the steps under the statute to demand to be heard (e.g., by filling out and returning the declaration of opposition form that was included with the Notice of Pending Sale sent to him).

Hawkins speculates that the notice of pending sale sent to his residence was returned to whoever sent it because he was in jail. However, he does not demonstrate that he has any personal knowledge of what happened to the notice. For example, he does not state that he filed a request to stop or return mail with the post office that might have caused the mail to be

---

and considered any statements of fact made by Hawkins under penalty of perjury as if they were part of an opposition to the motion for summary judgment. See Schroeder, 55 F.3d at 460 & nn.10-11.

1 returned to the sender, and he does not provide a declaration from anyone at his residence to the
2 effect that the person sent the notice back to the sender. Hawkins' speculation about what may
3 have happened to mail that went to his residence while he was in jail is not enough to create a
4 triable issue of fact.[4] Thus, he has not shown that his case is of the <u>Jones</u> sort, where the
5 question is whether additional reasonable steps should have been taken after the notice-giver
6 became aware the notice did not reach the property owner.

7 Hawkins also has not raised a triable issue of fact that El Dorado Towing knew he was
8 in jail rather than at his residence listed on the vehicle registration. He offered no evidence to
9 controvert Medrano's declaration that he was not apprised of the progress of the criminal
10 proceedings. Hawkins also has not identified any legal authority that puts a duty on a lienholder
11 to follow the custodial history of a vehicle owner, even if the lienholder has obtained possession
12 of the vehicle in connection with an arrest of the vehicle's owner. The fact that he was in jail
13 does not reasonably support an inference that El Dorado Towing knew he was there or knew that
14 the mailing to his residence would not reach him.

15 Hawkins has urged that the lien does not attach to personal property in or on the vehicle.
16 Cal. Veh. Code § 22851(b). He is correct on the law, but has no evidence to show that El
17 Dorado Towing asserted a lien or any claim of right to the personal property in the car. His
18 evidence suggests that El Dorado Towing did not do anything with the personal property except
19 to allow the sheriff's department to retrieve it. <u>See</u> document entitled "All Writ Act" (docket #
20 42), Exhs. B-C (exhibits showing that Hawkins' criminal case investigator contacted law
21 enforcement officers and the prosecutor to try to retrieve the personal property obtained from
22 the car, and showing some dispute about whether some of the items might have been evidence

---

[4]Earlier in this case, Hawkins stated, under penalty of perjury, in his opposition to the county defendants' motion to dismiss that "[n]otices of pending Sale was probably mailed to the address, But the defendant's mail was returned undelivered and unclaimed because plaintiff was in Redwood City Jail on a criminal case and the defendant's knew this. (See EXHIBITS, -A, B)" Docket # 17, p. 8 (errors in source). The exhibits to which he referred were a scheduling memorandum from the superior court, an inmate request form dated May 13, 2005 in which he requested information from his jailers as to how he could find out where his car had been towed and how to obtain his personal property from his car, and a <u>pro se</u> motion in his criminal case for the return of his personal property. None of the exhibits mentions El Dorado Towing or gives any indication that the towing service was aware of the documents, Hawkins' custodial status, or Hawkins' desire to contest the sale.

9

relating to Hawkins' criminal activities).

C. <u>Good Faith Defense</u>

The defense of qualified immunity is limited to governmental actors, but a similar "good faith" defense exists for private party defendants in a § 1983 action. The good faith defense may apply to private parties who become liable solely because of their compliance with an apparently valid law. The Supreme Court has suggested that such a defense may exist to address the seeming injustice of holding liable "private individuals who innocently make use of seemingly valid state laws" when the laws are later determined to be unconstitutional. See <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 942 n.23 (1982); <u>see also</u> <u>Wyatt v. Cole</u>, 504 U.S. 158, 169 (1992); <u>Richardson v. McKinght</u>, 521 U.S. 399, 413 (1997) (denying qualified immunity for private prison guards but leaving open the possibility of a good faith defense).

In <u>Clement v. City of Glendale</u>, 518 F.3d 1090 (9th Cir. 2008), the Ninth Circuit recently found that the good faith defense shielded a tow truck service that had towed a car at the behest of the police and acted in compliance with state law. "The [towing service] company did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions. The tow was authorized by the police department, conducted under close police supervision and appeared to be permissible under both local ordinance and state law. The constitutional defect–a lack of notice to the car's owner–could not have been observed by the towing company at the time when the tow was conducted; there would be no easy way for a private towing company to know whether the owner had been notified or not." <u>Id.</u> at 1097. Although <u>Clement</u> dealt with a towing company charged with improperly towing a vehicle and Hawkins' case concerns the allegedly improper sale of a towed vehicle, the rationale of the good faith defense supports its application here. Hawkins has not disputed El Dorado Towing's evidence that notice of the pending sale was sent in accordance with the procedure in California Civil Code § 3072, nor has he disputed that there was no evidence that would have made El Dorado Towing aware that the statutorily mandated method of giving notice of a pending sale had not worked in this particular instance. At the time the car was sold in June 2005, El Dorado

10

Towing reasonably relied on the procedure established by state law, the notice being properly sent in compliance with Civil Code § 3072, and the absence of any information indicating an opposition to the sale. El Dorado Towing therefore is entitled to judgment as a matter of law on its good faith defense.

## CONCLUSION

For the foregoing reasons, defendant Gilbert Medrano d/b/a El Dorado Towing is entitled to judgment as a matter of law on the merits of plaintiff's claim. Defendant's motion for summary judgment is GRANTED. (Docket # 49.) In light of the resolution of this motion, plaintiff's claims against all defendants have now been adjudicated and judgment will now be entered in favor of all defendants and against plaintiff. The scheduled case management conference, pretrial conference and trial dates are vacated. The clerk shall close the file.

IT IS SO ORDERED.

Dated: July 16, 2008

_____
SUSAN ILLSTON
United States District Judge